**Robert KLING, Campbell County Clerk, Movant,**

v.

**NORTHERN KENTUCKY AREA PLAN-NING COMMISSION, Respondent.**

Supreme Court of Kentucky.

July 6, 1983.

Rehearing Denied Aug. 31, 1983.

Paul H. Twehues, Jr., Newport, for movant.

Garry L. Edmondson, Covington, for respondent.

William A. Thielen, Gen. Counsel, Ky. Municipal League, Lexington, amicus curiae.

STEPHENSON, Justice.

The trial court and the Court of Appeals upheld the validity of two tax levies made by the Northern Kentucky Area Planning Commission after that organization had changed its fiscal year from a calendar year basis to July 1 to June 30. We granted discretionary review and reverse.

The Commission is a political subdivision created under authority of KRS 147.660 et seq., to perform planning functions in Kenton and Campbell Counties. The Commission derives its taxing authority from KRS 147.660(1), which provides as follows:

"The area planning commission created hereunder, when accepted by the cities and counties affected as provided for herein, shall then be a political subdivision and shall be in perpetual existence, with power to sue and be sued, contract and be contracted with, incur liabilities and obligations, levy an annual tax, which shall not exceed more than five cents (5 ¢) upon each one hundred dollars ($100) of the assessed valuation of property within the counties affected, to be used for the purpose of defraying all expenses necessary and incidental to carry out the continuing activities of the area planning commission. This tax shall be certified to the auditors and county clerks, of the various counties and by them to the respective treasurers of the counties, signature to the contract provided for in KRS 147.620. The tax shall be based upon the last preceding assessment for state and county purposes. Its collection shall be imposed upon all property within the counties participating and shall conform to the collection of taxes for counties and the same provisions concerning the nonpayment of taxes shall apply. The tax shall be added by the county clerk to the next state and county tax bill following the levy of the tax by the area planning commission, and shall be collected concurrently with state and county taxes. The sheriff shall be allowed a fee not to exceed four percent (4%) for collection."

Prior to 1981, the Commission's fiscal year ran from January 1 to December 31. For the assigned reason of coordinating its fiscal year with that of the counties within its jurisdiction, the Commission changed from a calendar year basis of accounting to a fiscal year which was to begin on July 1, 1981, and end on June 30, 1982.

The Commission stated that in order to effectuate this *change in accounting* a special fiscal year beginning on January 1, 1981, and ending on June 30, 1981, was to be financed by an *ad valorem* tax based upon the January 1, 1981, assessments.

The Commission then established a new tax rate for this special fiscal year. This tax rate, a .97-cent levy, would produce about one-half of the revenue that would be produced for a full year. Then the Commission adopted a resolution which established a tax rate, 2.0-cent levy, for the full fiscal year beginning July 1, 1981, and ending June 30, 1982.

The clerk of Campbell County (movant here) refused to list these tax levies on the 1981 state and county tax bill.

The Commission relied upon KRS 68.060 for authority for its action. This was enacted in 1934 as part of Kentucky Statutes, Section 907a and provides as follows:

"The fiscal year of each county shall begin on July 1 and end on June 30 next following. All county reports, budgets, appropriations and tax levies shall be made with reference to specific fiscal years or fractions thereof."

We are of the opinion the Court of Appeals erred in holding that KRS 68.060 is authority for the action of the Commission. In 1934 the assessment date for *ad valorem* taxes was on July 1 (Ky.Stat. 4042a–13), while the due date for taxes resulting from the July assessment was March 1 of the following year. When KRS 68.060 was enacted changing the dates of the fiscal year for the counties, there was change in the assessment date to conform to the fiscal year. Taxes are now based on an assessment as of January 1 of each year (KRS 132.220) and are due and payable on September 15 (KRS 134.020(1)) of the same year.

This portrayal of the tax picture before enactment of the present statutes is to illustrate that KRS 68.060 was accompanied by other acts of the General Assembly which changed the entire tax structure. We do not have a similar event here. We will assume for the purpose of this opinion that the Commission had the authority to change its fiscal year. It does not follow that this authority endows the Commission with any more authority than that granted in KRS 147.660. The statute grants the Commission authority to levy an *annual tax,* based upon the last preceding assessments for state and county purposes. It is further provided that the tax shall be added by the county clerk to the next state and county tax bill, and shall be collected concurrently with state and county taxes. Thus, with no change in assessment date, the two tax bills proposed by the Commission would be collected on the 1981 tax bill, January 1 to June 30 for the .97-cent levy and July 1, 1981, to June 30, 1982, for the annual levy. The Commission would continue to depend upon the assessment dates and collection dates presently prescribed by statute. Here the levies for 1981 would provide the Commission with eighteen months' revenue in 1981 to provide for the fiscal year ending June 30, 1982. By changing its fiscal year, the Commission does not lose any tax money. The tax is levied at the same time and presumably paid over at the same time. All the Commission has done is changed its bookkeeping. There is nothing in this record to even suggest that there is any hiatus in tax revenue by virtue of the changeover. The counties operate on a July to June fiscal year and receive their tax revenues at the same time. We are baffled by the argument that somehow this action of the Commission endows it with the authority to receive one and one-half times its annual tax revenues just because of a change of bookkeeping procedure.

The authority relied upon by the Commission is *Jefferson County Fiscal Court v. Jefferson County,* 257 Ky. 507, 78 S.W.2d 324 (1934). It is contended the situation

there is exactly the same as here. We have reviewed *Jefferson* and are of the opinion it has no application at all to the instant case. The opinion in *Jefferson* points out that in 1934 when the General Assembly mandated a change in tax levies to conform to the new fiscal year. As a consequence, the opinion in *Jefferson*, 78 S.W.2d at p. 324 states:

> "Under the general law and practices, tax levies have heretofore been made to care for fiscal years coinciding with calendar years. The intent of the new act is that taxes should be levied on the new basis. Taxes throughout the state had been levied and were in course of collection for the calendar fiscal year of 1934. That included, as subsequently developed, the first six months of the new fiscal year, July 1, 1934, to June 30, 1935. The result is that taxes have already been levied for that six months but not for the last period, so there must be a levy made to cover that period in order to prevent a hiatus in the current stream revenue flowing into the treasuries."

We are of the opinion *Jefferson* does not apply here and that the Commission had no authority to levy the additional .97–cent tax.

The decision of the Court of Appeals is reversed with direction that the trial court enter a judgment dismissing the suit filed by the Commission.

STEPHENS, C.J., and AKER, LEIBSON, STEPHENSON, VANCE and WINTERSHEIMER, JJ., sitting; all concur.

GANT, J., not sitting.